## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

CHAD RITTER,                          )
                             )
          **Plaintiff,**    )
                             )
**v.**                          )     **Case No. CIV-13-385-SPS**
                             )
CAROLYN W. COLVIN,                    )
**Acting Commissioner of the Social**  )
**Security Administration,**          )
                             )
          **Defendant.**   )

## OPINION AND ORDER

The claimant Chad Ritter requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant is engaged in substantial gainful activity, or his impairment is not medically severe, disability benefits are denied. If he does have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant can perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. See generally Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 6, 1973, and was thirty-seven years old at the administrative hearing (Tr. 33). He has a high school diploma and some college credit, and has worked as a tree trimmer, shop helper, material handler, grounds man, and delivery person (Tr. 162). The claimant alleges he has been unable to work since November 1, 2008 due to mental disorders, depression, anxiety, and back problems (Tr. 160).

## Procedural History

On January 20, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied initially on July 6, 2010 and upon reconsideration on September 8, 2010 (Tr. 70-80, 83-88). ALJ Edmund C. Werre conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated December 20, 2011 (Tr. 16-24). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full

range of work at all exertional levels with the non-exertional limitation of being able to understand, remember and carry out simple and some complex tasks that are repetitive and routine in nature (Tr. 20). The ALJ concluded that the claimant was not disabled because he could return to his past relevant work of tree trimmer helper and welder's helper (Tr. 22). However, in the alternative, the ALJ concluded that there was also other work in the national economy the claimant could perform, *i. e*, hand packager, cleaner, and inspector (Tr. 23).

**Review**

The claimant contends that the ALJ: (i) failed to provide a promised supplemental hearing, (ii) failed to properly perform the step 4 and step 5 determination, (iii) failed to properly consider the medical source evidence, and (iv) failed to perform a proper credibility determination. The Court agrees with the claimant's third contention and the decision of the Commissioner should therefore be reversed.

The ALJ found that that the claimant had the severe impairments of attention deficit hyperactivity disorder (ADHD), a depression disorder, an anxiety disorder and polysubstance abuse in reported remission (Tr. 18). The medical records relevant to this appeal reveal that the claimant initially sought mental health treatment in January of 2005 at Laureate Psychiatric Clinic and Hospital and was diagnosed with depression, generalized anxiety, and attention deficit hyperactivity disorder by Dr. Jeff Mitchell. He was prescribed Stratterra and referred to Dr. Lindsay Patterson for psychotherapy and further ADHD assessment (Tr. 219-225). Claimant continued treatment through Laureate Psychiatric Hospital until April of 2006 (Tr. 202-218). Claimant began treatment with

Dr. Hazem Sokkar in November of 2006 and consulted with him monthly through October of 2008 (Tr. 242-267). Dr. Sokkar prescribed Adderall and Alprazolam (Tr. 242-267). Claimant ceased consults with Dr. Sokkar in November of 2008, resumed them beginning in March of 2009 and continued monthly through August of 2010 (Tr. 229-241, 300-305).

Dr. Michael Morgan conducted a psychological consultative examination of the claimant on May 11, 2010 (Tr. 276). He noted claimant reported his chief complaint as "I have a lack of ability to finish any task" (Tr. 276). He observed that the claimant was appropriately dressed and groomed; that he appeared to be intoxicated or over-medicated on a stimulant; that his mouth was dry and he was suffering from psychomotor agitation; that he was chewing gum constantly; that his speech was tangential and when asked questions claimant could not stay on topic (Tr. 276). His diagnostic impression of the claimant was: (i) anxiety disorder not otherwise specified, (ii) alcohol dependence with physiological dependence, (iii) amphetamine dependence with physiological dependence, (iv) cannabis dependence with physiological dependence, early full remission, (v) nicotine dependence with physiological dependence, non-compliance with treatment, (vi) back pain (by claimant report), and (vii) underemployment and financial difficulties. He also assigned claimant a current global assessment of functioning ("GAF") score of 66-70 (Tr. 279). Dr. Morgan's prognosis for the claimant was that with compliance to appropriate treatment, claimant can achieve a higher level of psychological functioning in less than one year (Tr. 280).

State reviewing physician Dr. Burnard Pearce completed a Psychiatric Review Technique (PRT) on June 8, 2010, in which he found that the claimant's mental impairments fell under both anxiety related disorders and substance addition disorders (Tr. 282). As a result, Dr. Pearce found that the claimant had mild limitations in activities of daily living; in maintaining social functioning; and in maintaining concentration, persistence, or pace (Tr. 292). Dr. Pearce also completed a Mental Residual Functional Capacity Assessment in which he found that the claimant was moderately limited in his ability to understand and remember detailed instruction, to carry out detailed instructions, and to interact appropriately with the general public (Tr. 296-297).

The relevant medical evidence further reveals that Dr. John Hickman conducted a psychological consultative examination of the claimant on December 7, 2011 (Tr. 386). Dr. Hickman observed that the claimant's grooming and hygiene appeared to be in normal limits, that he did not evidence any abnormalities to his gait or posture, and that he displayed mild hyperactivity while sitting and had trouble maintaining his concentration (Tr. 386). Dr. Hickman administered the Mental Status Exam, Wechsler Memory Scales – III and the Trail Making Test (Tr. 387). Dr. Hickman reported that the claimant obtained an average General Memory Index of 107 (42nd percentile) and an average Working Memory Index of 102 (55th percentile) (Tr. 388). He reported that the claimant's current level of functioning is in the low average to average range of mental ability and that he has average general and working memory functions (Tr. 389).

Additionally, Dr. Hickman completed a Medical Source Statement and stated that the claimant had moderate limitations with his ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 392). As to the claimant's social interactions, Dr. Hickman also stated that the claimant had moderate limitations in his ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes (Tr. 392-393). Further, Dr. Hickman stated that as to the claimant's adaptability, he has a moderate limitation on his ability to be aware of normal hazards and to take appropriate precautions, and to set realistic goals or make plans independently of others (Tr. 393). Dr. Hickman made the following relevant diagnosis: ADHD by history, inattentive type; generalized anxiety disorder; history of alcohol abuse in sustained remission by claimant report; history of marijuana abuse in sustained remission by claimant report; marked stress from unemployment, financial stress, and social isolation, as well as a GAF of 50 (Tr. 390). He indicated claimant's prognosis is guarded due to his lack of current psychiatric treatment (Tr. 390).

Dr. Minor W. Gordon conducted a psychological consultative examination of the claimant on February 23, 2012 (Tr. 394). He noted claimant reported his chief complaint as "Somehow I have a hard time getting ready for work" (Tr. 394). He observed that the

claimant was cleanly and neatly dressed and groomed, he ambulated without notable difficulty, there was no difficulty with his attention during the evaluation, and he was very vague in responding to the questions during the evaluation (Tr. 396). Dr. Gordon made no diagnoses and assigned claimant a GAF score of 80 (Tr. 397).

The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir.2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir.2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300–01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir.2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96–2p,

1996 WL 374188, at *5 (July 2, 1996). Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional.... An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir.2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir.1995).

Here, the ALJ summarized the claimant's testimony as well as the medical record. He summarized the records including the assessments of Dr. Morgan, Dr. Pearce, Dr. Hickman, and Dr. Gordon, but provided no analysis for adopting or discrediting these opinions (Tr. 20-21). The ALJ failed to explain whose opinions and assessments he was adopting and whose he was rejecting. This is particularly important where, as here, the ALJ appeared to rely on two of the state physicians' findings and reject one state physician's findings without explanation. *Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir.2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir.1991). *See also Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir.2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir.1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only

the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the ruling of the Commissioner of the Social Security Administration is REVERSED and the case REMANDED for further proceedings not inconsistent herewith.

**DATED** this 17th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**